**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JIMMY THOMPSON,

        Plaintiff,

v.                              CIVIL ACTION NO.  2:18-cv-01318

RICHARD BARKER, et al.,

        Defendants.


**MEMORANDUM OPINION AND ORDER**


Before the Court are cross-motions for summary judgment filed by Plaintiff Jimmy Thompson ("Plaintiff"), (ECF No. 84), and Defendants Richard Barker ("Barker") and PsiMed, Inc., ("PsiMed") (collectively, "Defendants"), (ECF No. 79).  For the reasons provided herein, both Plaintiff's motion, (ECF No. 84), and Defendants' motion, (ECF No. 79), are **DENIED**.

## I.    BACKGROUND

This action arises from the prolonged application of mechanical restraints to an inmate at the Mount Olive Correction Complex ("MOCC").  Barker is the Vice President of Jail Services at PsiMed, which is a third-party mental health service provider at MOCC.  (ECF No. 5 at 2 ¶ 2, 3 ¶ 5 (Am. Compl.).)  Plaintiff, who is serving a life sentence upon a guilty plea of first-degree murder, has been incarcerated since March 21, 2011.  (*Id.* ¶ 8.)  Plaintiff has a troubled background and significant history of mental illness.  (*Id.* ¶¶ 9–11.)  Since being incarcerated at MOCC, Plaintiff has threatened suicide and repeatedly acted violently towards himself and others. (ECF No. 80-11 (WVDOC Investigation Report).)

On October 2, 2016, Plaintiff was placed in a four-point restraint for a total of sixteen hours due to his expressions of suicidal ideations and disruptive behavior. (ECF No. 5 at 4 ¶ 12.) During his restraint, Plaintiff "urinated on himself and the metal bed" to which he was shackled. (*Id.* ¶ 13.) At no time did prison officials attempt to clean the bodily fluids from Plaintiff or the metal platform. (*Id.*) After the first eight hours of his restraint, Barker authorized prison officials to keep Plaintiff in the four-point restraint for an additional eight hours. (*Id.* ¶ 14.) Barker, who is not a licensed medical professional, delivered this verbal order without a PsiMed physician personally examining Plaintiff. (*Id.* at 3 ¶ 5, 4 ¶ 14.)

Per PsiMed's policy, a psychiatrist may order the use of restraints for up to eight hours "[if] after personally examining the inmate, it is determined that the inmate is actively suicidal or poses a threat of serious harm to self or others in the near future, and a strip cell does not provide adequate safeguards." (ECF No. 80-9 (PsiMed Policy).) In the absence of a psychiatrist during an emergency, "a licensed psychologist may order therapeutic restraints not to exceed two hours." (*Id.*) The policy does not provide for a procedure in the event of an emergency when neither a psychiatrist nor psychologist is present.

On September 26, 2018, Plaintiff filed the instant action asserting six causes of action against PsiMed and Barker.[1] The Amended Complaint asserts two 42 U.S.C. § 1983 claims for violations of the Eighth Amendment's Cruel and Unusual Punishment Clause (Counts I and II). (ECF No. 5 at 6–9.) The Amended Complaint also asserts state law claims for aiding and abetting assault and battery (Count III), intentional infliction of emotional distress ("IIED") (Count IV), conspiracy (Count V), and medical malpractice for breach of the applicable standard of care (Count

---

[1] The Amended Complaint also asserted claims against Wexford Health Services, Inc. and Debbie Jarvis, who have since resolved their disputes with Plaintiff and have been dismissed from this action. (*See* ECF No. 104.)

VI).  (*Id.* at 9–12.)  With respect to these claims, Plaintiff seeks compensatory and punitive damages and equitable relief.  Plaintiff and Defendants filed the pending cross-motions for summary judgment on November 7, 2019.  (ECF Nos. 79, 84.)  The parties timely responded to the respective motions on November 21, 2019.  (ECF Nos. 86, 89.)  Plaintiff filed a timely reply in support of his motion, (ECF No. 90), and Defendants filed a reply in support of their motion on November 29, 2019, (ECF No. 91).  As such, the motions have been fully briefed and are ripe for adjudication.

## II.    *LEGAL STANDARD*

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."  *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).  When construing such factual issues, the Court may neither weigh the evidence, *Anderson*, 477 U.S. at 249, nor make determinations of credibility.  *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citation omitted)).

3

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the Court must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

## III.    DISCUSSION

### A.  Eighth Amendment Violations

Plaintiff asserts two Eighth Amendment violations of the Cruel and Unusual Punishment Clause under 42 U.S.C. § 1983 for excessive force and deliberate indifference to safety and personal needs. Section 1983 provides a civil cause of action to redress violations of the Constitution or of federal rights. *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979) (this "section is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."). To establish a claim under § 1983, a plaintiff must demonstrate a violation of a federal right and

"that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). Here, the state action element of Plaintiff's claim is not in dispute. Defendants concede this point as both a corporation and its employees contracting with the state to provide constitutionally required medical services to inmates qualify as state actors for purposes of § 1983. *See id.* at 55–56 (explaining that "[i]t is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the state."). The present issues are limited to whether Defendants violated Plaintiff's constitutional right to be free from cruel and unusual punishment.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. In the prison context, the Eighth Amendment's proscription against cruel and unusual punishments "protects inmates from inhumane treatment and conditions while imprisoned." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (internal quotation omitted). This protection prohibits the use of excessive force against inmates and imposes affirmative duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations omitted). Claims under the Eighth Amendment have two components: (1) a subjective component of whether the official "act[ed] with a sufficiently culpable state of mind[,]" and (2) an objective component of whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) (alterations in original). The showing required for each of these components varies "according to the nature of the alleged constitutional violation." *Id.* at 8; *Wilson*, 501 U.S. at 302 (stating "wantonness does not have a fixed meaning

but must be determined with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged") (citations omitted). Further, the objective component of an Eighth Amendment claim must be guided by "contemporary standards of decency." *Id.* at 311.

1. Excessive Force

In Count I of the Amended Complaint, Plaintiff alleges that Defendants' prolonged use of restraints was an unnecessary application of excessive force in violation of his right to be free from cruel and unusual punishment. (ECF No. 5 at 6–8.) Plaintiff contends that Eighth Amendment claims involving the use of mechanical restraints must be analyzed under a conditions of confinement framework, subject to a deliberate indifference standard. However, case law establishes that the extended use of restraints can be viewed through the lens of a conditions of confinement claim or an excessive force claim. The analysis applied to a claim depends on the factual circumstances that led to the use of restraints. *See Hope v. Pelzer*, 536 U.S. 730 (2002); *Zimmerman v. Schaeffer*, 654 F.Supp.2d 226 at 248–49 (M.D. Pa. 2009) (distinguishing cases where the use of mechanical restraints fell under a conditions of confinement or excessive force analysis). In *Whitley v. Albers*, the Supreme Court established that in non-emergency situations when the State's responsibility to an inmate "does not ordinarily clash with other equally important governmental responsibilities," deliberate indifference applies. 475 U.S. 312, 320 (1986). In contrast, where "officials act in response to a prison disturbance, their actions are necessarily taken 'in haste, under pressure,' and balanced against 'competing institutional concerns for the safety of prison staff or other inmates.'" *Wilson*, 501 U.S. at 302 (quoting *Whitley*, 475 U.S. at 320–21). Under these circumstances, the Supreme Court in *Whitley* concluded "that application of the deliberate indifference standard is inappropriate." *Hudson*, 503 U.S. at 998. "Instead, the

question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (internal citation omitted).

Here, the facts are undisputed that Plaintiff was initially placed in the four-point restraint because of his suicidal threats and inclinations. (ECF No. 1 at 4 ¶ 12.) Though PsiMed was not onsite on the day of the incident, it nevertheless ordered the extended duration of a four-point restraint based on prison staff's representations that Plaintiff continued to exhibit aggressive behavior. Because the decision to restrain Plaintiff was made "under pressure" when faced with this safety concern, the Court finds that Plaintiff's claim better aligns with an excessive force analysis articulated in *Whitely* and, thus, it will be treated as such. *See Young v. Martin*, 801 F.3d 172 (3d. 2015) (applying excessive force analysis where inmate was secured to a four-point restraint for fourteen hours to subdue suicidal impulses); *Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996) (applying *Whitley* test for excessive force to prolonged detention in four-point restraint after application of pepper spray); *Parks v. Williams*, 157 F. App'x 5 (9th Cir. 2005) (considering placement of prisoner in a four-point restraint under excessive force test "after inmate intentionally and repeatedly flooded the upper and lower tiers of his housing unit and verbally assaulted prison staff.").

In the context of excessive force, the "core judicial inquiry" is whether "force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 320–21). To establish the objective component of an excessive force claim, the plaintiff must show that the

official's actions were "objectively harmful enough" to offend "contemporary standards of decency." *Id.* at 8. This objective component "can be met by the pain itself, even if an inmate has no enduring injury." *Williams*, 77 F.3d at 762 (internal quotation omitted). However, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10. In other words, this inquiry "focuses not on the severity of any injuries inflicted, but rather on 'the nature of the force,' which must be 'nontrivial.'" *Tedder v. Johnson*, 527 F. App'x 269, 272 (4th Cir. 2013) (quoting *Wilkins v. Gaddy*, 559 U.S. 34 (2010)).

Under the subjective component, the requisite state of mind is "wantonness in the infliction of pain." *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 322). Factors to consider in making this determination include "the need for application of force, the relationship between the need and the amount of force that was used, the threat reasonably perceived by the responsible official, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321); *Williams*, 77 F.3d at 761–62. The Supreme Court has further emphasized that prison administrators are entitled to broad "deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321–22.

In this case, Plaintiff claims that Defendants' used unreasonable and excessive force to restrain him in excess of eight hours. He contends that Defendants ordered the prolonged duration of the four-point restraint for a total of sixteen hours without conducting a personal examination of him to determine whether he was actively suicidal or posed a threat to himself or others in

violation of PsiMed's policy.  Due to his excessive restraint, he claims that he was tortured and deprived of water and bathroom breaks.  (ECF No. 5 at 6–8; ECF No. 85 at 7–9.)  Defendants assert several arguments contending that Plaintiff cannot establish that their approval of the use of restraints for an additional eight hours violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.  First, Defendants claim they were not responsible for monitoring or caring for Plaintiff while he was in the four-point restraint and, thus, any deprivation to water or bathroom facilities has no bearing on them.  (ECF No. 80 at 12–13.)  Second, Defendants contend that they adhered to the PsiMed policy as closely as possible and, thus, PsiMed's decision to continue the use of restraints without first conducting a personal examination was reasonable given the urgent circumstances.  (*Id.* at 15–16.)

As an initial matter, the Court finds that there is evidence on which Plaintiff can establish the objective component of his excessive force claim.  A reasonable jury could find that immobilizing an inmate in a four-point restraint for sixteen hours constitutes more than *de minimis* pain, regardless of whether there is proof that the inmate suffered any lasting physical or mental injury.  *See Williams*, 77 F.3d at 762 (stating that the "absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis.") (citing *Hudson*, 503 U.S. at 7).  The video of Plaintiff's 16-hour restraint is illuminating.  (ECF No. 84-1 (Video).)  The video shows that around 2:00 p.m. Plaintiff was cuffed at his ankles and wrists to a metal bed without clothing until 6:00 a.m. the next day.  Throughout the course of his restraint, Plaintiff was provided water two times and, at least on one occasion, was removed from the restraints and given the opportunity to use the bathroom.  Since Plaintiff was restrained to the metal bed, his access to the toilet was not independent.  Instead, he was wholly reliant on being removed from the four-

point restraint to use the bathroom. The video depicts Plaintiff urinating on the metal bed, where he was left to lay in his own waste. While there is "no doubt that toilets can be unavailable for some period of time without violating the Eighth Amendment," *Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000), exposure to human waste carries particular weight under a cruel and unusual punishment analysis. *See Williams v. Collier*, 357 F. App'x 532, 2009 WL 2171236, at *3 (4th Cir. July 22, 2009) (finding that "a prisoner's exposure to human waste may give rise to an Eighth Amendment violation."). Exposure to waste evokes health concerns and the more general standards of dignity embodied in the Eighth Amendment. *See, e.g., Hope*, 536 U.S. at 738 (finding extreme deprivation when given water only once or twice and no bathroom breaks); *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (inmates entitled to reasonably adequate sanitation and personal hygiene); *Ramos v. Lamm*, 639 F.2d 559, 566 (10th Cir. 1980) (sanitation is a "core area" of the Eighth Amendment), *cert. denied*, 450 U.S. 1041 (1981). Based on this evidence, a reasonable jury could find that the conditions and emotional stress Plaintiff faced in the mechanical restraints is beyond humiliating and inconvenient but rather the sort of force that is "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9–10.

Turning to their first argument, Defendants attempt to refute Plaintiff's contention that their role in ordering the extended use of the four-point restraint presented any substantial risk of harm to Plaintiff. Defendants claim that they had no control over the conditions of Plaintiff's confinement while he was in the four-point restraint and that their involvement "ended with the approval of the additional eight hours." (ECF No. 80 at 12.) Without referring to specific language, Defendants point to PsiMed's policy in support of its argument that, as a mental health provider, PsiMed had no responsibility to ensure Plaintiff received adequate water and bathroom

10

breaks while in the four-point restraint. The PsiMed policy states that "[e]xcept for monitoring of health status, the mental health staff does not participate in the restraint of inmates ordered by custody staff." (ECF No. 80-9.) However, when a psychiatrist orders the extended use of restraints, as was done here, the policy requires PsiMed's direct participation. In particular, PsiMed's policy states that a psychiatrist may place an inmate in restraints only "after personally examining the inmate." (*Id.*) Even though this incident occurred on the weekend when no mental healthcare providers from PsiMed were available onsite, the decision to continue the use of restraints fell on PsiMed.

When an inmate shows "that officials have 'maliciously and sadistically use[d] force to cause harm, contemporary standards of decency *always* are violated.'" *William*, 77 F.3d at 761 (citing *Hudson*, 503 U.S. at 9) (emphasis in original). Thus, the appropriate question under an excessive force analysis is whether Defendants' decision to continue Plaintiff's restraint was warranted and if he was prevented from accessing the bathroom solely as a wanton act of punishment.

Viewing the facts in the light most favorable to Plaintiff, and applying the factors articulated in *Whitley*, a reasonable trier of fact could conclude that Defendants' use of mechanical restraints against Plaintiff constituted the wanton infliction of pain in violation of the Eighth Amendment. As stated previously, the factors considered in determining whether officials acted maliciously and sadistically for the purpose of causing harm to the inmate are as follows: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 6–7; *Whitley*, 475 U.S. at

321.   Each factor is discussed in turn.

First, the necessity for the use of the restraints in the first instance against Plaintiff is not disputed.   Both parties have proffered evidence that restraints were initially applied in response to Plaintiff's suicidal threats and aggressive behavior towards prison officials.   Plaintiff has a long history of institutional misconduct and has previously been placed in ambulatory restraints on multiple occasions for flooding his cell, throwing feces out of his cell, possessing an unauthorized item, and disclosing thoughts of suicide.   (ECF No. 80-11.)   Prior to the institution of his four-point restraint, Plaintiff was placed on suicide watch and once again flooded his cell.   PsiMed's policy expressly authorizes the use of a four-point restraint "where serious violence or injurious acts to self or others . . . are determined to be imminent and less restrictive means have proven to be either clinically inappropriate or ineffective."   (ECF No. 80-9.)   Also, there is evidence that Plaintiff was routinely placed in restraints when he exhibited violent and threatening behavior to prevent him from harming himself and others.

Second, the parties dispute the relationship between the need for the mechanical restraints and the extent of their use.   Per WVDOC policy, DOC officers are not permitted to use mechanical restraints on inmates for longer than eight hours unless PsiMed authorizes continued use of restraints for up to an additional eight hours.   (ECF No. 84-5 at 6 (WVDOC Policy).)   Warren Dempsey was the DOC officer responsible for checking on Plaintiff during the last few hours of his first eight-hour restraint period and determining whether a request for additional restraint time was necessary.   (ECF No. 80-3 (Dempsey Dep.))   Dempsey testified that, during this time, Plaintiff was verbally aggressive and nonresponsive to his questions and orders.   Plaintiff's noncompliance led Dempsey to contact PsiMed via Barker for approval to continue the use of

12

restraints for an additional eight hours. Barker testified that he then relayed the information to Dr. Thistlethwaite at PsiMed, who authorized an additional eight hours so long as Plaintiff remained noncompliant. (ECF No. 84-3 (Barker Dep.); ECF No. 80-7 (Text Messages).)

However, as Plaintiff argues, the prolonged use of restraints was not consistent with PsiMed's policy. The PsiMed policy calls for a personal examination of an inmate prior to ordering restraints to determine whether "the inmate is actively suicidal or poses a threat of serious physical harm to self or others in the near future." (ECF No. 80-9.) Defendants admit that, since the incident occurred on a Sunday when no psychiatrist or psychologist was contracted to be present at MOCC, no psychiatrist conducted a personal examination of Plaintiff. They argue that since the policy simply serves as a guideline and did not address every contingency, such as a when no doctor is present during an emergency situation, Defendants were justified in establishing an on-call procedure and ordering the additional use of restraints based on the DOC officer's representations. Defendants emphasize that had further restraints not been ordered, there was a considerable risk that Plaintiff would have engaged in further dangerous behavior that would have posed a risk of harm to himself and others. Plaintiff disputes this assertion and contends that a personal examination would have required his release from the four-point restraint. He points to the WVDOC investigation report, which found based upon video footage that Plaintiff appeared compliant and calm and followed verbal commands when checked on by prison staff during the first eight-hour period of his restraint. (ECF No. 89-7 (WVDOC Investigation Report).)

For the same reasons, the parties dispute whether Defendants reasonably perceived the threat to Plaintiff's own safety under the third factor. Defendants' determination to approve the continued use of restraints was based solely on information provided by the prison staff.

Furthermore, it was PsiMed's practice for Barker, an individual with no medical license or training, to act as the liaison for MOCC and PsiMed when the on-call process was utilized. (ECF No. 80-7 (Thistlethwaite Dep.)) Whether it was reasonable for PsiMed to rely on observations and information conveyed by nonmedically trained individuals is a question for the jury.

Finally, it remains unclear whether any efforts were made to temper the severity of Plaintiff's restraint period. Per PsiMed's policy, a physician's order must document the length of time and type of restraint to be used. (ECF No. 80-9.) In addition, the progress notes must state "other methods of management that have been unsuccessfully attempted." (*Id.*) PsiMed's policy also calls for the use of soft restraints and alternative restraints only when soft restraints "have proven to be ineffective" or if the inmate has a history of soft restraints being ineffective. (*Id.*) Here, Dr. Thistlethewaite did not specify the type of restraints to be used. (ECF No. 80-7.) Further, accordingly to DOC officers, soft restraints were not even available at MOCC. (ECF No. 80-3 (Dempsey Dep.).)

Based on these disputed facts, the Court cannot find that it was reasonable for Defendants to order continued restraints in this case. Not only was the decision to order restraints by phone not consistent with PsiMed's policy but also there are material issues of fact as to whether Plaintiff continued to pose a threat to himself and others throughout the course of his restraint. Thus, reasonable minds could differ as to whether it was reasonable for Defendants to order continued restraints without conducting a personal examination to determine if Plaintiff was already subdued. *See Williams*, 77 F.3d at 766 n.5 (explaining that a failure to comply with prison policy "would not mean that [the plaintiff] would automatically prevail on his Eighth Amendment claim"); *cf. Miller v. Leathers*, 913 F.2d 1085, 1088 (4th Cir. 1990) (official's violation of regulations supports

the "inference" of bad intent), *cert. denied*, 498 U.S. 1109 (1991).   Accordingly, both Plaintiff's and Defendants' motions for summary judgment on Plaintiff's Eighth Amendment claim related to the use of mechanical restraints is **DENIED**.

2. <u>Medical Needs</u>

Plaintiff also alleges in Count II that Defendants were deliberately indifferent to Plaintiff's personal and medical needs by ordering continued restraints in violation of PsiMed's policy. (ECF No. 5 at 8–9.)   To prevail on an inadequate medical care claim, an inmate must show that the officials "acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)."   *Iko*, 535 F.3d at 241 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).   As for the objective component, a serious medical condition is one that has either "been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would perceive the need for a doctor's attention."   *Id.* (internal quotation omitted).

In order to demonstrate a deliberate indifference to a serious medical need, the plaintiff must show that the defendant was "aware of facts from which an inference could be drawn that a substantial risk of serious harm exists," that he actually drew that inference, and that he disregarded the risk by failing to take "reasonable measure" to abate the risk.   *Farmer*, 511 U.S. 835–37.   A finding of deliberate indifference requires more than a showing of mere negligence.   *Id.* at 835; *Sosebee v. Murphy*, 797 F.2d 179, 181 (4th Cir. 1986).   Rather, to be actionable, the treatment, or lack thereof, "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness."   *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's proper medical care does not support a claim of cruel and unusual punishment unless exceptional

15

circumstances exist. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

With respect to his medical needs claim, Plaintiff contends that Defendants were deliberately indifferent to his need for medical care by authorizing the use of restraints for an additional eight hours in violation of PsiMed's policy. (ECF No. 5 at 8–9; ECF No. 85 at 7–9.) Specifically, he claims that, despite having knowledge of his mental illnesses and suicidal tendencies, Defendants prolonged his restraint without personally examining his mental state. He also claims to have sustained scarring and bruising on his ankles and wrists due to the prolonged use of restraints.[2] Defendants argue that Plaintiff's medical needs claim must fail because he cannot establish that he suffered any injury from the four-point restraint that required medical treatment. (ECF No. 80 at 13.) In addition, Defendants argue that Plaintiff cannot establish that they acted with deliberate indifference because, rather than ignoring Plaintiff's suicidal tendencies, the restraints were ordered to protect Plaintiff from harming himself. (*Id.* at 8.)

As for the scars Plaintiff claims to have received from the prolonged use of restraints, he has presented no evidence to demonstrate that these scars were caused from this specific incident and that they required medical treatment. As Defendants note, Plaintiff's testimony calls into question whether any scarring on his wrists can be attributed to this incident. Plaintiff admitted during his deposition that he had been handcuffed at least once a week, and up to three times a week, since his incarceration. (ECF No. 80-1 at 4–6 (Plaintiff Dep.).) The WVDOC investigation report also notes that Plaintiff was placed in restraints on four separate dates—on

---

[2] Plaintiff also asserts in his motion for summary judgment that, after being released from the four-point restraint, he was escorted to the shower and received burns from scalding water sprayed from the shower hose. (ECF No. 85 at 10.) To the extent Plaintiff claims Defendants were deliberately indifferent to the burns he purportedly sustained in the shower, there is no evidence that Defendants were personally involved in any incident after Plaintiff was released from the four-point restraint. Therefore, even if Plaintiff did receive burns that required medical treatment, this claim is of no moment with respect to Defendants Barker and PsiMed.

September 27, September 28, September 30, and October 1—leading up to the incident in this case. (ECF No. 80-11.) Thus, the Court agrees that Plaintiff has failed to connect this injury to the restraint on October 2, 2016.

Nevertheless, "[Plaintiff's] psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies." *Perez v. Oakland Co.*, 466 F.3d 416, 428 (6th Cir. 2006) (internal citation omitted); *Estate of Pollard v. Hood Co.*, 579 F. App'x 260, 265 (5th Cir. 2014). Here, there is no dispute that Plaintiff was initially restrained because of his suicidal ideations and threats. Days prior to this incident, Plaintiff was placed on suicide watch and expressed suicidal intentions. (ECF No. 80-1 (Plaintiff Dep.).) Defendants concede that they "knew of [Plaintiff's] suicidal and homicidal ideations," (ECF No. 80 at 8), and ordered the additional use of restraints based on prison staff's representations that Plaintiff continued to exhibit threatening behavior. The Court has no difficulty finding based upon these undisputed facts that Plaintiff's suicidal tendencies presented a serious medical need.

Turning to the subjective component, the parties dispute whether Defendants' failure to act in accordance with PsiMed's policy was done with deliberate indifference. As discussed previously, while the policy provides for situations when a psychiatrist is not available on site, it does not provide for situations when neither a psychiatrist nor psychologist is available. For the reasons discussed previously, (*see supra* III.A.1), issues of material fact preclude the Court from determining whether Defendants acted with deliberate indifference to Plaintiff's psychological needs. In particular, the evidence calls into question whether Defendants took reasonable measures to abate Plaintiff's safety risks where they failed to personally examine him prior to

authorizing continued restraints and, instead, relied solely on information communicated through nonmedical staff.   Accordingly, summary judgment with respect to Count II is **DENIED**.

### B.   Aiding and Abetting Assault and Battery

Next, Plaintiff alleges that Defendants aided and abetted an assault and battery of Plaintiff by authorizing and condoning the continued use of restraints.   (ECF No. 5 at 9–10.)   West Virginia recognizes "aiding and abetting a tort" as a theory of liability.   *Price v. Halstead*, 355 S.E.2d 380, 386 (W. Va. 1987).   "The basis for imposing liability under an aiding and abetting theory is that if the breach of duty by the actor was substantially encouraged by the conduct of a third party, then this party may also be found liable."   *Id.*; *see also Barth v. Performance Trucking Co.*, 424 S.E.2d 602, 604 (W. Va. 1992) ("For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." (citation omitted)).   In *Kessel v. Leavitt*, 511 S.E.2d 720, 752 (W. Va. 1998), the West Virginia Supreme Court of Appeals cited favorably to 78 Am.Jur.2d *Torts* § 9 (1974) for the proposition that "one who does anything, or permits anything to be done, without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights, is absolutely liable."

Because issues of fact exist on Plaintiff's Eighth Amendment claims, there are likewise issues of fact as to whether Defendants aided and abetted an assault and battery under West Virginia law.   Therefore, Defendants' motion on this claim is **DENIED**.

*C. Intentional Infliction of Emotional Distress*

In Count IV, Plaintiff alleges that Defendants intentionally and recklessly continued use of restraints in violation of PsiMed's policy causing Plaintiff to suffer severe mental distress. (ECF No. 5 at 10–11; ECF No. 85 at 12–13.) In West Virginia, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Syl. pt. 6, *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 694 (W. Va. 1982). The West Virginia Supreme Court of Appeals has set forth the following elements necessary to establish intentional infliction of emotional distress:

> (1) That defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) That the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) That the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) That the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Philyaw v. E. Associated Coal Corp.*, 633 S.E.2d 8, 13 (W. Va. 2006) (quoting syl. pt. 3, *Travis v. Alcon Labs.*, 504 S.E.2d 419, 425 (W. Va. 1998)). The court further explained that "whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." Syl. pt. 4, *Travis*, 504 S.E.2d at 421. This claim requires conduct that is "more than unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Id.* at 425 (citation omitted). Conduct which "is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, overzealous, or negligent does not constitute outrageous conduct" and cannot support an intentional infliction of emotional distress claim as a matter of law. *Bertolotti v. Prunty*, No. 3:09–0952, 2010 WL

3743866, at *5 (S.D. W. Va. Sept. 21, 2010) (quoting *Hines v. Hills Dep't Stores, Inc.*, 454 S.E.2d 385, 390 (W. Va. 1994)). Rather, for conduct to meet the "outrageousness" standard, it "must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Harless*, 289 S.E.2d at 704–05 (W. Va. 1982) (quoting Restatement (Second) of Torts § 46, cmt.d).

Defendants argue that this claim is incompatible with the conclusion that they acted reasonably in relying on the information provided by the prison staff given the emergency situation. However, as discussed above, the Court cannot conclude that their conduct was reasonable. Further, Defendants contend that Plaintiff has failed to establish that he suffered severe mental distress attributable to this incident. But, the record indicates that Plaintiff was strapped to a metal bed, laying in his own urine for several hours. The duration of the emotional pain he endured while in restraints is certainly linked to Defendants, who authorized the continued use of the four-point restraint without personally examining Plaintiff. Therefore, the motions for summary judgment on this count are **DENIED**.

D. *Conspiracy*

In Count IV of the Amended Complaint, Plaintiff claims that Defendants conspired to restrain him in the four-point restraint solely to punish him. He also claims Defendants conspired to cover up their wrongful acts by remaining silent and failing to intervene on Plaintiff's behalf. (ECF No. 5 at 11–12.) A civil conspiracy under West Virginia law is recognized as the following:

> A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff.

Syl. Pt. 8, *Dunn v. Rockwell*, 689 S.E. 2d 255 (W. Va. 2009).

Although there is no dispute that Defendants authorized the additional eight hours of restraint, this evidence does not conclusively establish that they conspired to accomplish the alleged constitutional violations. Accordingly, because issues of fact exist as to the lawfulness of Defendants' actions, summary judgment under Count IV is **DENIED**.

*IV.     CONCLUSION*

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment, (ECF No. 84), and **DENIES** Defendants' motion for summary judgment, (ECF No. 79.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      January 15, 2020

_____

THOMAS E. JOHNSTON, CHIEF JUDGE